IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TAMMY SUE MOWRY, | ) | CASE NO. 1:12-CV-2313 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | MEMORANDUM |
| SECURITY, | ) | OPINION & ORDER |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 13). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Tammy Sue Mowry's applications for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., and for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court VACATES the Commissioner's decision and REMANDS the case back to the Social Security Administration.

## I.  PROCEDURAL HISTORY

Around October 23, 2008, Plaintiff Tammy Sue Mowry ("Plaintiff" or "Mowry") protectively filed applications for Disability Insurance benefits and Supplemental Security Income benefits.  (Tr. 129-31, 132-36).  Mowry alleged she became disabled on December 20, 2005, due to "back surgery, depression, anxiety, [and] spondolosis." (Tr. 205, 168).  Plaintiff's date last insured was June 30, 2007. (Tr. 27, 164).  Plaintiff's applications were denied initially

1

and upon reconsideration.  (Tr. 59, 62, 69, 71).  Plaintiff then filed a request for a hearing before an administrative law judge ("ALJ").  (Tr. 74).  On April 13, 2011, Administrative Law Judge Kim McClain-Leazure convened a hearing.  (Tr. 40-54).  Plaintiff, who was represented by counsel, as well as a vocational expert, Robert Mosely, appeared and testified.  (*Id*).

On April 19, 2011, the ALJ issued her decision after applying the five-step sequential analysis[1] to determine whether Plaintiff was disabled. (Tr. 25-34).  Based on her review, the ALJ held that Mowry had not been under a disability since her alleged onset date. (*Id*.).  Following the issuance of this ruling, Plaintiff sought review of the ALJ's decision from the Appeals Council. (Tr. 21).  However, the council denied Plaintiff's request, thereby making the ALJ's ruling the final decision of the Commissioner. (Tr. 1-3).  Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

---

[1]  The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The Sixth Circuit has summarized the five steps as follows:

(1)     If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2)     If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)     If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)     If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)     Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

## II.  PERSONAL BACKGROUND INFORMATION

Mowry was born on June 3, 1971, and was 39 years old on the date of her hearing before the ALJ. (Tr. 44).  Accordingly, Plaintiff was considered a "younger person" for Social Security purposes. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).  Plaintiff completed the twelfth grade and attended two years of cosmetology school.  (Tr. 172-73).  She has past experience working as a production machine tender.  (Tr. 51).

## III.  MEDICAL EVIDENCE[2]

In December 2005, Plaintiff underwent surgery on her back. (Tr. 216).  The surgery involved a foraminotomy at L5-S1, a fusion, and an illiac graft. (*Id.*).  On January 4, 2006, surgeon M.R. Viau, M.D., noted Plaintiff was experiencing pain as expected, but was healing nicely, with x-rays showing a good position of her recent implants.  Dr. Viau limited Plaintiff to no bending or lifting. (*Id.*).  At the beginning of February 2006, Dr. Viau noted Plaintiff was still feeling discomfort.  Despite Plaintiff reporting a fall, her x-rays did not show substantial changes. (*Id.*).  Later in February 2006, Plaintiff went to the emergency department of Mansfield Hospital where she reported having fallen a number of times. (Tr. 231-32, 234-35).  Mowry's family members told an emergency room physician that they believed she may have a narcotics addiction and no one had witnessed her falling. (Tr. 232).  The doctor agreed, writing Plaintiff's pain was out of proportion with the type of injury claimed and there was no evidence of actual injury. (*Id.*).  Plaintiff was treated and discharged in stable and improved condition. (Tr. 235).

On March 22, 2006, Dr. Viau noted Plaintiff's pain had improved. (Tr. 215).  By April 21, 2006, the doctor recommended beginning physical therapy. (*Id.*).  On May 31, 2006, Dr.

---

[2] The following is a summary of the medical evidence relevant to the undersigned's decision.  It is not intended to fully reflect all of the evidence the undersigned took into consideration in reaching its decision.

Viau indicated Plaintiff had developed a seizure disorder due to her use of Wellbutrin for depression and she began treatment with a neurologist. (*Id.*).  In July 2006, Plaintiff complained to Dr. Viau of significant back pain in her upper back, with the lower back having improved. (*Id.*).  Plaintiff indicated she was still having seizures despite treating with a neurologist.  (*Id.*). In August 2006, Dr. Viau was concerned that Mowry may have a non-displaced osteoporotic compression fracture. (*Id.*).  On November 29, 2006, Plaintiff reported to the emergency department of Shelby Hospital for back pain. (Tr. 229).  A physical examination showed no guarding, as well as maintained strength, sensation, and reflexes. (*Id.*).

On February 1, 2007 Mowry underwent an MRI of her back, which showed:

- Left parasagittal disc protrusion through the left neural foramina with narrowing of the left L3-L4 neural foramina and impingement of the existing left nerve root. Clinical correlation was suggested. Mild spinal canal narrowing at L3-L4.
- Mild degenerative disc changes from T12 through L1. Small left parasagittal disc protrusion at T12-L1.
- Status post bilateral laminectomy at L5. Posterolateral instrument fusion at L5 and S1 with dowel. Grade 1 spondyloisthesis at L5 over S1. Probable narrowing of the left L5-S1 neural foramina. (Tr. 218).

In March 2007, Plaintiff had a second back surgery. (Tr. 225-26).  The surgery involved removal of spinal hardware; inspection of spinal fusion at L4, L5, and S1; a decompressive laminectomy at L3-4; diskectomy at L3-4 on the left; spinal fusion of L3 to L5; and iliac bone graft. (Tr. 225). In May 2007, Dr. Viau opined Plaintiff was improving post-surgery and her x-rays showed good position of her implants. (Tr. 213).

In January 2008, Plaintiff presented to the emergency room, reporting a fall. (Tr. 237). Healthcare providers noted drug addiction. (*Id.*).  A physical examination showed Plaintiff's back was non-tender; a well-healed surgical scar; and extremities displayed equal, symmetric deep tendon reflexes, strength, and sensation. (Tr. 238).  Plaintiff was assessed with alcohol withdrawal and a low back strain. (Tr. 238-39).

4

In January 2008, a physician from Richland Country Job and Family Services performed a physical examination of Plaintiff to determine her functional limitations. (Tr. 252).  The doctor found Plaintiff could stand for a total of two to four hours in an eight hour work day, sit for six to seven hours, frequently lift up to five pounds, and occasionally lift more than five pounds. (*Id.*). The doctor opined that Mowry was extremely limited in pushing/pulling and bending, but was able to reach, handle, and perform repetitive foot movements without limitation. (*Id.*).

During October 2008, Plaintiff presented to the emergency room on two occasions due to wrist and back injuries. (Tr. 219-20, 254-55).  She was diagnosed with a sprained left wrist and low back strain. (Tr. 219-20).  Tendon reflexes were symmetrical in her upper and lower extremities, there were no focal motor or sensory changes, and her straight leg raise was negative up to 45 degrees bilaterally. (Tr. 219-20, 454-55).  Plaintiff denied numbness, weakness, and tingling. (Tr. 454).  Her provider assessed no evidence of neurovascular compromise. (Tr. 455).

State agency doctor Sushil Sethi, M.D., performed a physical examination of Plaintiff on March 11, 2009. (Tr. 294-96).  All of Plaintiff's extremities showed a normal range of motion; her grasp, pinch, manipulation, and fine coordination were normal; there was some limitation in the lumbar spine range of motion; deep tendon reflexes were normal; motor and sensory were also normal. (Tr. 295).  Dr. Sethi concluded that Plaintiff's ability to do work-related activities such as sitting, standing, walking, lifting, and handling, was moderately limited. (Tr. 296).

On March 24, 2009, state agency non-examining consultant, Jerry McCloud, M.D., conducted a review of Plaintiff's medical records. (Tr. 301-08). Following his review, he opined that Plaintiff could lift up to twenty pounds occasionally, lift ten pounds frequently, stand or walk for at least two hours in an eight hour workday, and sit about six hours in an eight hour

workday with a "periodic" sit-stand option. (Tr. 302).  Dr. McCloud found Mowry unlimited in pushing and pulling, other than as indicated for lifting. (*Id.*).

In December 2009, Plaintiff underwent an MRI of her thoracic spine. (Tr. 361-62).  The impression was degenerative disc change with minimal posterior disc bulge at the T7-8 and T8-9 levels without nerve root impingement or spinal stenosis. (Tr. 361).  No nerve root impingement was otherwise noted. (*Id.*).  There was enhanced scaring at the L4-5 and L5-S1 levels surrounding the nerve root sleeves where they exit the thecal sac at these levels. (Tr. 362).  At L2-3 there was a moderate broad based posterior disc bugle with bilateral facet arthropathy and ligamentum flavum hypertrophy causing mild to moderate spinal stenosis. (*Id.*).  T12-L1 showed a moderate broad based posterior disc bulge without spinal stenosis. (*Id.*).

The record contains a letter from physical therapist Stephen Ross, P.T., providing that Plaintiff attended seven physical therapy visits in January and February 2010. (Tr. 314).  Plaintiff cancelled four appointments, with one cancellation due to icy roads, and failed to keep one appointment. (*Id.*).  Mr. Ross noted improvement with some exercises, but that physical therapy was discontinued due to Plaintiff "not returning for further visits." (*Id.*).

On March 17, 2010, Plaintiff presented to Theodore Togliatti, M.D., for low back pain. (Tr. 311).  Plaintiff explained she was doing better, with significant improvement in her leg pain, and forty percent improvement with spinal injections. (*Id.*).  Mowry also indicated that physical therapy had been helpful. (*Id.*).  Dr. Togliatti recommended facet injections. (*Id.*).

In July 2010, Naren Lakshmipath, M.D., evaluated Plaintiff for pain management. (Tr. 449-50).  Plaintiff complained of pain rating at a seven out of ten, exacerbated by sitting, standing, and walking.  But Mowry denied sensory motor changes in her lower extremities. (Tr. 449).  During a physical examination, Plaintiff displayed severe pain with thoracolumbar loading

6

maneuvers and facet loading pain from T12 through L1 bilaterally. (*Id.*).  Mowry's straight leg raises were negative. (*Id.*).  Dr. Lakshmipathy's impression was chronic pain secondary to failed back surgery with left L5-S1 radiculopathy, but most pain related to thoracolumbar spondylosis with facet-related pain clinically from T12 to L3. (Tr. 450).  The doctor ordered facet joint injections, which were administered by Robert Gould, M.D., in August 2010. (Tr. 430).  On September 9, 2010, Dr. Gould noted facet injections gave Mowry pain relief at about twenty percent improvement. (Tr. 426).  Plaintiff denied leg symptoms, but complained of neck pain radiating into the left with numbness and tingling. (*Id.*).  In October 2010, Mowry underwent epidural steroid and nerve block injections. (Tr. 409-10, 413, 416).

In February 2011, Plaintiff treated with Dr. Viau. (Tr. 469).  Plaintiff was seen for thoracic and lumbar back pain, with no radicular pain noted. (*Id.*). Dr. Viau explained that Plaintiff's x-rays showed the fusion from her surgery was solid and in good position.  He did not see any obvious compression deformities or acute changes beyond some disc space narrowing in the lumbar spine. (*Id.*).  Upon examining Mowry, the doctor noted that she sat far forward in a flexed position and could barely bend at the waist without severe pain. (*Id.*).  The doctor ordered an MRI and follow up visit.  By April 2011, Plaintiff was still unable to obtain an MRI due to her insurance carrier's refusal to cover the screening. (*Id.*).

## IV.  SUMMARY OF THE ALJ's DECISION

The ALJ made the following relevant findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2007.

2. The claimant has not engaged in substantial gainful activity since December 20, 2005, the alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease with spondylosis status post multiple back surgeries.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a).

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on June 3, 1971 and was 34 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

   ...

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 20, 2005, through the date of this decision.

## V. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387.  However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VII.  ANALYSIS

### A.  The ALJ's Step Three Analysis

At the third step of the disability evaluation process, the ALJ must evaluate whether the claimant's impairments satisfy the requirements of any of the medical conditions enumerated in the Listing of Impairments within 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010).  The Listing of Impairments recites a number of ailments which the Social Security Administration has deemed "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. §§ 416.925(a), 404.1520(a).  Each listing describes "the objective medical and other findings needed to satisfy the criteria of that listing."  20 C.F.R. §§ 416.925(c)(3), 404.1520(c)(3).

In order to "meet" a listing, the claimant must satisfy all of the listing's requirements. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009). However, if the claimant does not meet all of the listing's requirements, he may still be deemed disabled at this stage if his impairments "medically equal" the listing. 20 C.F.R. §§ 416.926(b)(3), 404.1526(b). To do so, the claimant must present "medical findings" that show his impairment is "equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (emphasis in original).

At Step Three of the analysis in the instant case, the ALJ held that Mowry's severe impairment of degenerative disc disease did not meet or equal Listing 1.04. (Tr. 29)  The listing provides as follows:

> 1.04  Disorders of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), ***resulting in compromise of a nerve root*** (including the cauda equine) or the spinal cord.  With:
>
> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
>    or
>
> C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Sbpt P, App. 1, § 1.04 (emphasis added).

Mowry challenges the level of the ALJ's articulation at step three.  She contends that the ALJ failed to conduct a sufficient analysis of whether the evidence presented met or equaled the requisite listing.  Some decisions in this district, relying on Sixth Circuit case law, have stated that a "heightened articulation" standard at step three is not required.  *See, e.g., Walker v. Astrue,* 1:12-CV-01284, 2013 WL 591968, at *4 (N.D. Ohio Jan. 18, 2013) *report and recommendation adopted,* 1:12-CV-1284, 2013 WL 592008 (N.D. Ohio Feb. 14, 2013); *Marok v. Astrue,* No. 5:08-CV-1832, 2010 WL 2294056, at *3 (N.D. Ohio June 3, 2010) (*citing Bledsoe v. Barnhart,* No. 04–4531, 2006 WL 229795, at *411 (6th Cir. Jan. 31, 2006)).  However, in *Reynolds v. Comm'r of Soc. Sec.,* 424 F. App'x 411, 415 (6th Cir. 2011), the Sixth Circuit observed that "the ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence."

The level of articulation at step three that this jurisdiction demands of the ALJ is somewhat unsettled.  Nevertheless, the undersigned finds that on the facts of the present case, the ALJ did not make her reasons for the listing determination sufficiently clear to enable a meaningful review.  Here, the ALJ's step three finding was limited to the following:

> The severity of Listing 1.04 requires a spine disorder . . . resulting in compromise of a nerve root (including the cauda equina) or the spinal cord with additional criteria.  There is no evidence the claimant has compromise of a nerve root.  Therefore, a finding of conclusive disability cannot be reached at the third step of the sequential evaluation.

(Tr. 29).

Without any additional analysis from the ALJ regarding the medical observations and their relation to any element of listing 1.04—including the threshold requirement of nerve root compromise—the Court cannot meaningfully determine whether substantial evidence supports the ALJ's conclusion that Plaintiff did not satisfy the listing.  *See Grohoske v. Commissioner of*

*Social Security*, 3:11-CV-410, 2012 WL 2931400, at *3 (N.D. Ohio July 18, 2012) (Baughman, M.J.) (where, at step three the ALJ's only analysis was that "the record [did] not document abnormal clinical and laboratory findings [as] to the severity required by the listing," remand was necessary because "without any development, as required by *Reynolds*, of how particular items of record evidence do or do not match specific criteria of the listing" the reviewing court was left without a basis for meaningful review).  In particular, Plaintiff points to an MRI from February 2007 that indicated impingement of the left nerve root, which arguably could establish a compromised nerve root. (Tr. 214).  While the ALJ acknowledged this evidence at step four of the sequential evaluation, the opinion does not provide adequate insight as to why the ALJ may have decided this evidence failed to meet the listing's threshold requirement.[3] (Tr. 30).

The Commissioner maintains that even if the ALJ erred in her analysis, remand is not necessary because Mowry's impairment cannot satisfy the listing.  The Commissioner's Response includes citations to medical evidence in the record that the Commissioner argues do not support a finding that Plaintiff's impairment meets or equals the criteria of listing 1.04(A).  Although the Commissioner's Response analyzes record evidence that the ALJ may have relied upon to decide that Mowry's degenerative disc disease did not meet the relevant listing, "courts may not accept appellate counsel's *post hoc* rationalizations for agency action.  It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Berryhill v. Shalala*, 4 F.3d 993, at *6 (6th Cir. Sept. 16, 1993) (unpublished opinion) (*quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50

---

[3] At step four, the ALJ also concluded that Plaintiff's 2007 back surgery "was a success," which may have signaled the ALJ's implicit finding that the surgery resolved any nerve issues.  However, to support the conclusion that the surgery was successful, the ALJ simply cited to a medical record describing the surgical procedure.  The ALJ referenced no other evidence showing that the surgery remedied Plaintiff's back impairment, or more importantly, that established Plaintiff's failure to meet the relevant listing.

(1993) (citation omitted)).  Consequently, the Court is precluded from relying on these arguments.

Additionally, the ALJ's failure to adequately explain how she determined that Mowry's impairment does not meet a listing is not harmless error in this case.  If a claimant is found to meet a listed impairment, the claimant is conclusively disabled and entitled to benefits, without any additional analysis.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).   An ALJ's error at step three may be harmless where the review of the decision provides sufficient information for the Court to decide that no reasonable administrative fact finder would have resolved the matter differently. *Hufstetler v. Comm'r of Soc. Sec. Admin.*, 1:10-CV-1196, 2011 WL 2461339, at *10 (N.D. Ohio June 17, 2011).   Here, the ALJ's relatively brief discussion of medical evidence at step four is not sufficient for the Court to conclude with certainty that Plaintiff did not meet listing level.  For example, while the ALJ discussed some of Plaintiff's MRI results, she failed to indicate the impact of Plaintiff's impairment on factors relevant to listing 1.04, such as motor or reflex loss.  Consequently, Plaintiff's first assignment of error presents an adequate basis for remand so that the ALJ may provide a more thorough step three analysis.[4]

**B.  Plaintiff's Credibility**

Plaintiff asserts that the ALJ erred in evaluating her subjective complaints of pain.  The undersigned will not reach this issue because, on remand, the ALJ's evaluation of the evidence under step three may impact her findings under the remaining steps of the sequential analysis. See *Shea v. Astrue*, 11-CV-1076, 2012 WL 967088 at *11 (N.D. Ohio Feb. 13, 2012) (Burke, M.J.) (*citing Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. App'x 411, 417 (6th Cir. 2011)).

---

[4] A full review and analysis after remand may not result in a disability finding at step three, but without a meaningful explanation, this possibility cannot be conclusively decided.  However, this decision should in not be construed as an advisory opinion in favor of a finding of disability on remand.

However, the Court notes that Plaintiff's assignments of error raise some questions as to the ALJ's analysis.

Plaintiff argues the ALJ improperly discredited her on the basis of cancelled physical therapy appointments.   In her opinion, the ALJ wrote: "Although [Plaintiff] noted throughout treatment that [physical therapy] did improve her back pain, she cancelled 24 appointments in a 6 week time period.   This behavior is inconsistent with the allegations of both pain and improvement related to her back impairment. (15F/1)." (Tr. 30).  Plaintiff correctly contends that the Exhibit 15F cited by the ALJ does not support the conclusion that she cancelled twenty-four appointments.  Exhibit 15F is a letter in which Mowry's physical therapist explained that over the course of a month, Mowry failed to keep one appointment and cancelled only four appointments, with one cancellation due to icy road conditions. (Tr. 322).  Upon remand, ALJ may choose to clarify her finding on this issue.

Additionally, Plaintiff maintains that the ALJ should not have discredited her on the ground that she cancelled physical therapy appointments and ultimately discontinued physical therapy and back injections, because the ALJ failed to consider why she discontinued treatment. An ALJ is entitled to evaluate an individual's level and frequency of treatment when assessing credibility and the claimant's subjective complaints of pain.  SSR 96-7p at *7.   However, Social Security Ruling 96-7p cautions the ALJ:

> [T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.  The adjudicator may need to re-contact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment . . .

14

Here, the record does not appear to clearly establish why Plaintiff did not pursue treatment. While an ALJ is not obligated to question the claimant to determine if there are good reasons, upon remand the ALJ may wish to take Social Security Ruling 96-7p into consideration.

Lastly, Plaintiff objects to the ALJ's use of her daily activities to undermine her allegations of pain.  Citing to a body of case law, Mowry argues that the performance of minor daily activities is insufficient to establish the ability to engage in substantial gainful activity.  The Sixth Circuit has held that, in some cases, a claimant's ability to perform relatively "mundane daily activities" does not, on its own, support a negative inference regarding credibility. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247–48. (6th Cir. 2007).  However, an ALJ may consider the claimant's household and social activities when evaluating the claimant's complaints of pain. *See Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 805 (6th Cir. 2008) (the ALJ properly found the plaintiff's activities of daily living—including mopping and sweeping, carrying laundry baskets with clothes, cooking, doing dishes, shopping alone on occasion—were inconsistent with the level of pain and fatigue alleged); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).  Plaintiff cites to *Cohen v. Secretary of Health and Human Services*, 964 F.2d 524, 529-30 (6th Cir. 1992), among other cases, in support of her argument.  However, in *Cohen* the Sixth Circuit indicated that it was proper for the ALJ to consider the extent of Cohen's activities in assessing both Cohen's credibility and residual functional capacity. *Id.* at 529.

Here, the ALJ found that Plaintiff's daily activities were relevant to evaluating the intensity and severity of her symptoms.  The ALJ noted that Plaintiff, with some assistance from others, helped to care for her mother and two sons, cleaned, cooked, and shops. (Tr. 31, 176-78).  In addition, Plaintiff's daily activities were not the only ground for the ALJ's credibility

determination; the ALJ provided other reasons that Plaintiff does not contest.  Thus, additional consideration of this issue may not be necessary upon remand.

### C.  The ALJ's Step Five Finding

Morwy also contends that the ALJ's step five finding is not supported by substantial evidence, because the ALJ failed to pose a hypothetical question to the vocational expert that accurately portrayed her limitations.  Plaintiff argues that the hypothetical question should have taken into account that she would be off-task because of pain and would miss work one to two times per month.

For the same reason stated previously herein, the undersigned will not address Mowry's arguments regarding the ALJ's finding at step five.  However, the Court observes that an ALJ need not incorporate unsubstantiated complaints into the controlling hypothetical question.  *See Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994); *Arnwine v. Comm'r of Soc. Sec.*, 1:12-CV-1483, 2013 WL 3365137 at *13 (N.D. Ohio July 3, 2013). Notably, Mowry has not cited any medical source opining that she required these limitations.

## VIII.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the Court VACATES the decision of the Commissioner and REMANDS the case to the Social Security Administration.

IT IS SO ORDERED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date:  December 17, 2013.

16